**ATTACHMENT A-1**

**FACTUAL BASIS FOR BREACH**

The Factual Basis for Breach of the November 26, 2019 Deferred Prosecution Agreement ("DPA"), between the Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the Office of the United States Attorney for the Southern District of New York (the "Office," and together with the Fraud Section, the "United States"), and the Defendant, Telefonaktiebolaget LM Ericsson ("LM Ericsson" or the "Company") is incorporated by reference as part of the plea agreement, dated March 2, 2023, between the United States and LM Ericsson.

On December 6, 2019, the United States filed a two-count criminal Information (the "Information") in the United States District Court for the Southern District of New York charging LM Ericsson with one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, *see* Title 15, United States Code, Section 78dd-1, and one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the books and records and internal controls provisions of the FCPA, *see* Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(2)(B), and 78m(b)(5). *See United States v. Telefonaktiebolaget LM Ericsson*, 19 Cr. 884, Dkt. 3.

The same day, the United States also filed the DPA between the United States and LM Ericsson. *See United States v. Telefonaktiebolaget LM Ericsson*, 19 Cr. 884, Dkt. 6. In exchange for LM Ericsson agreeing, among other things, "to continue to cooperate with the Fraud Section and the Office in any investigation as described in Paragraph 5[,]" the United States agreed not to prosecute LM Ericsson for any crimes described in the Statement of Facts, including the bribery

scheme in Djibouti, as well as books and records and internal control violations in Djibouti, China, Vietnam, Indonesia, and Kuwait that occurred over a period of years. *Id.* ¶ 16. As part of the DPA, the Company also agreed, among other things, to pay a penalty of $520,650,432. As part of responding to the United States' FCPA investigation which led to the DPA, LM Ericsson hired two separate law firms as outside counsel ("prior outside counsel"). The Company interacted with the Fraud Section and the Office through its prior outside counsel in connection with its cooperation with the United States.

Relevant to the United States' breach determination, Paragraph 5 of the DPA stated, in part:

> The Company shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term, subject to applicable laws and regulations, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.

> a.    The Company shall truthfully disclose all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Fraud Section and the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Fraud Section and the Office, upon request, any document, record, or other tangible evidence about which the Fraud Section and the Office may inquire of the Company.

Additionally, Paragraph 6 of the DPA stated, in part:

> In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and the Office.

The United States, in an exercise of the discretion conferred upon it by the agreed upon terms of the DPA (namely, Paragraph 17 of the DPA), has determined that LM Ericsson violated

Paragraphs 5 and 6 of the DPA and declared a breach of the DPA. Relevant considerations in arriving at that determination and making that declaration include the following:

- LM Ericsson's failure to truthfully disclose all factual information and evidence regarding the Djibouti scheme, the China scheme, and other potential violations of the FCPA anti-bribery or accounting provisions; and

- LM Ericsson's failure to promptly report and disclose evidence and allegations of conduct related to its historical business activities in Iraq that may constitute a violation of the FCPA.

## I. <u>Substantially Delayed Disclosures of Key Factual Information and Evidence – China, Djibouti Investigations</u>

LM Ericsson failed to disclose to the United States certain evidence, factual information, and documents that were required to be disclosed pursuant to Paragraphs 5 and 6 of the DPA. The substantially delayed disclosures hindered the United States' investigations and possible prosecutions of certain individuals and criminal conduct. Based upon the totality of the conduct described below, the United States, which can declare a breach of its own discretion, has determined that the Company is in breach of the DPA.

### A. May 2011 Email Between Employee 1 and Employee 3 Regarding the Djibouti Bribery Scheme

The Statement of Facts included in the DPA described the Djibouti bribery scheme, explaining, in part, that "[i]n or about and between 2010 and 2014, LM Ericsson, through certain of its agents, including Ericsson Egypt, Ericsson AB, Employee 1, Employee 2, Employee 3, Employee 4, and others knowingly and willfully conspired and agreed with others to corruptly provide approximately $2,100,000 in bribe payments to, and for the benefit of, foreign officials in Djibouti, including Foreign Official 1, Foreign Official 2, and Foreign Official 3, in order to secure an improper advantage in order to obtain and retain business with Telecom Company A and to win a contract valued at approximately €20,300,000 with Telecom Company A (the 'Telecom Company A Contract')." DPA, Attachment A-2, at ¶ 34. Although the United States anonymized

Employee 1, Employee 3 (now former employees), and the relevant foreign officials in the Statement of Facts, the Company knew the true identities of those individuals and their roles in the Djibouti bribery scheme.

The Company failed to disclose to the United States until May 2021 a significant May 2011 email between two of the principal Ericsson executives who orchestrated the Djibouti bribery scheme (the "May 2011 Email"). In the May 2011 Email (which was in Italian), now former Employee 1, the Head of the Customer Unit in North East Africa, informed now former Employee 3, a high-level executive, that the Company had just won a contract and had been assisted in that effort by its agent, "who is [Foreign Official 2] in person!" Employee 3 replied, "Ok, Understood." Employee 1 and Employee 3 frequently communicated by email in Italian, and the Company produced to the United States a number of other emails between Employee 1 and Employee 3 that were written in Italian. The May 2011 Email was responsive to search terms agreed upon between the United States and LM Ericsson had the Company run those terms in Italian. In addition, the May 2011 Email was part of a broader email chain about the Djibouti Telecom contract. Prior to entering into the the DPA, the Company produced other branches of the same email chain. However, the Company failed to produce to the United States this key piece of evidence—which confirmed that its executives had knowingly paid a foreign official in order to obtain the telecommunications contract for the Company—until May 2021, more than one year after the Company entered into the DPA and one month after the same email was provided to a foreign authority. That disclosure failure prevented the United States from bringing certain charges against certain individuals.

### B. The February 2018 Email Between Ericsson Manager and LM Executives Regarding the China Scheme

As part of the DPA, the Statement of Facts described the criminal conduct relating to China, explaining, in part, that "[i]n or about and between at least 2000 and 2016, LM Ericsson, through certain of its employees and agents, including CBC, EHK, ENC, Employee 5, Employee 6, Employee 7, Employee 8, and Employee 9, caused tens of millions of dollars to be paid to various agents, consultants, and service providers in China, at least a portion of which was used to provide things of value, including leisure travel and entertainment, to foreign officials, including employees of Telecom Company B." DPA, Attachment A-2, at ¶ 65. Although the United States anonymized Employee 5, Employee 6, and Employee 8 (now former employees) in the Statement of Facts, LM Ericsson knew the true identities of these individuals and their roles in the China books and records and internal controls scheme.

Nonetheless, the Company failed to disclose a significant email that an LM Ericsson manager (the "Ericsson Manager") for the North East Asia Market, which included China, sent to a senior officer at LM Ericsson in February 2018 (the "February 2018 Email"). In the February 2018 Email, the Ericsson Manager raised several allegations against former senior executives of LM Ericsson and its subsidiary in Asia—including Employees 5, 6, and 8—who played central roles in the China criminal scheme. The Ericsson Manager alleged how the senior executives in China had engaged in improper relationships with third-party agents who were at the heart of the China criminal scheme and had known of and approved very large payments from LM Ericsson to the agents without much, if any, work being performed by the agents. In the February 2018 Email, the Ericsson Manager also alleged a "conspiracy by certain of the top management in the company to withhold information" and noted that the "conspiracy may also be criminal if it was to withhold information from the Board or the US authorities."

Upon receipt of the February 2018 Email, senior leadership of LM Ericsson recognized its significance to the United States' investigation and immediately asked the Company's prior outside counsel to investigate the allegations. For more than three years, the Company failed to produce the February 2018 Email to the United States or disclose all of the facts gathered during its independent investigation into the February 2018 Email's allegations as part of its cooperation with the United States. The Company did not disclose the February 2018 Email to the United States until April 2021. That late disclosure harmed the United States' ongoing criminal investigation, including by preventing the United States from taking key investigative steps that were foreclosed by the time the Company finally produced the February 2018 Email.

### C. Thousands of Responsive Documents Stored at Ericsson's Headquarters

For many years, including prior to and during the United States' investigation, LM Ericsson maintained certain hard copy records—such as agreements with third parties, third-party invoices, and due diligence files—in safes and locked filing cabinets in secured storage areas in basements of various buildings at the Company's headquarters in Sweden. In addition, LM Ericsson personnel maintained two USB drives that contained records regarding third-party payments and agreements, including records regarding who approved and signed those agreements and who approved the payments. Those materials contained information relevant to the United States' investigation into bribery, books and records, and internal control schemes—including significant evidence concerning the China criminal conduct charged in the Information. LM Ericsson failed to produce those materials to the United States until April 2021, even though some Company employees knew about their existence as early as 2015.

Specifically, certain LM Ericsson employees and now former executives, as well as prior outside counsel, were aware of these records and understood that they were required to produce

them to the United States.  For example, as early as 2015, certain LM Ericsson employees knew of documents in a secure storage area at the Company's headquarters that contained information relating to third parties, including significant evidence related to the China criminal conduct— such as invoices for payments to third parties known to be involved in the China scheme.  These disclosure failures, including at least hundreds of documents containing key evidence of the bribery, books and records, and internal controls schemes, impaired the United States' ongoing criminal investigation.

## II.    Failure to Disclose Evidence or Allegations of Conduct that May Violate the FCPA - Iraq Investigation

On November 22, 2019, two weeks prior to entering into the DPA and at the direction of senior corporate leadership, LM Ericsson's prior outside counsel disclosed generalized information to the United States relating to a new internal investigation it was conducting concerning the Company's operations in Iraq (the "2019 Iraq Disclosure").  Prior outside counsel's disclosure omitted key details related to the Company's investigative findings to that date that were known to the Company and its prior outside counsel at the time.  LM Ericsson finalized the Iraq investigation report on December 11, 2019—five days after its entry into the DPA—LM Ericsson's prior outside counsel did not update the United States on the findings and conclusions of the investigation despite being required to do so by the terms of the DPA.  More than two years later, in February 2022, both the United States and LM Ericsson received requests for information from an investigative journalist consortium regarding the Company's business in Iraq.  Following the requests to the Company, it contacted the United States and conducted a review of the 2019 Iraq Disclosure.  After reviewing the 2019 Iraq Disclosure, LM Ericsson, through new outside counsel, provided an updated disclosure to the United States regarding the Company's 2019 internal investigation into the Iraq business (the "2022 Iraq Disclosure").  The 2022 Iraq Disclosure

included information and evidence of possible FCPA violations and other serious misconduct that had not previously been provided to the United States as part of the 2019 Iraq Disclosure and as required by the DPA. Although LM Ericsson leadership had directed prior outside counsel to disclose the Iraq investigation to the United States in late 2019, the 2019 Iraq Disclosure provided during a telephone call by the Company's prior outside counsel omitted material facts and information, as well as evidence of possible misconduct, known to the Company and its prior outside counsel. The full details of the Iraq investigation were not disclosed to the United States until after LM Ericsson became aware of the potential news report in 2022.