UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA                                    19 Cr. 884 (LTS)

v.

TELEFONAKTIEBOLAGET LM ERICSSON

## **PLEA AGREEMENT**

The United States of America, by and through the Department of Justice, Criminal Division, Fraud Section (the "Fraud Section") and the Office of the United States Attorney for the Southern District of New York (the "Office") and the Defendant, Telefonaktiebolaget LM Ericsson (the "Defendant"), by and through its undersigned attorneys, and through its authorized representatives, pursuant to authority granted by the Defendant's Board of Directors, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### **Term of the Defendant's Obligations Under the Agreement**

1.      Except as otherwise provided in Paragraph 12 below in connection with the Defendant's cooperation obligations, the Defendant's obligations under the Agreement shall be effective for a period beginning on the date on which this Agreement is entered and ending June 2, 2024 (the "Term"). The Defendant agrees, however, that in the event the Fraud Section and the Office determine, in their sole discretion, that the Defendant has knowingly failed to completely perform or fulfill its obligations under paragraphs 7(c)-(d), 8(h)-(i), 9-10, 23(d), and any other paragraphs relating to the Defendant's compliance program and the independent compliance monitor, the Fraud Section and the Office, in their sole discretion, may impose an extension of the

compliance and Monitor terms for up to a total additional time period of one year, without prejudice to the Fraud Section and the Office's right to proceed as provided in Paragraphs 23-26 below.  Conversely, in the event the Fraud Section and the Office find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the Monitor described in Attachment D, and that the other provisions of this Agreement have been satisfied, the  Monitor may be terminated early.

## The Defendant's Agreement

2.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to plead guilty to Counts One and Two of Information 19 Cr. 884 (the "Information").  Count One of the Information charges the Defendant with conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, *see* Title 15 United States Code, Section 78dd-1.  Count Two of the Information charges the Defendant with conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the books and records and internal controls provisions of the FCPA, *see* Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(2)(B), and 78m(b)(5).  The Defendant is subject to prosecution for this conduct (which occurred from 2000 to 2016) following the determination of the Fraud Section and the Office that the Defendant breached the Deferred Prosecution Agreement, which the Defendant entered into with the Fraud Section and the Office on December 6, 2019.  *See* 19 Cr. 884, Dkt. 6 (the "DPA").  In light of the Defendant's breach of the terms of the DPA based on inadequate document production and reporting and entry of a guilty plea, the DPA has been vitiated by this Agreement.  The Defendant further agrees to persist in that

plea through sentencing and to cooperate fully with the Fraud Section and the Office, as set forth in Paragraph 12.

3.     The Defendant understands that, to be guilty of these offenses, the following essential elements of each offense must be satisfied and were satisfied here through the acts of former employees:

Count One

        a.      The agreement specified in the Information—namely, the agreement to violate the anti-bribery provisions of the FCPA—existed between two or more persons;

        b.      the Defendant knowingly and willfully joined in that conspiracy; and

        c.      one of the conspirators committed an overt act in furtherance of the conspiracy.

Count Two

        a.      The agreement specified in the Information—namely, the agreement to violate the books-and-records and internal-controls provisions of the FCPA—existed between two or more persons;

        b.      the Defendant knowingly and willfully joined in that conspiracy; and

        c.      one of the conspirators committed an overt act in furtherance of the conspiracy.

4.     The Defendant understands and agrees that this Agreement is between the Fraud Section and the Office and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority.  Nevertheless, the Fraud Section and the Office will bring this Agreement and the nature and quality of the conduct, cooperation, and remediation of the Defendant and its direct or indirect

affiliates, subsidiaries, and joint ventures to the attention of other law enforcement, regulatory, and debarment authorities, as well as Multilateral Development Banks ("MDBs"), if requested by the Defendant.

5.      The Defendant agrees that this Agreement will be executed by authorized corporate representatives.  The Defendant further agrees that a resolution duly adopted by the Defendant's Board of Directors in the form attached to this Agreement as Attachment B ("Certificate of Corporate Resolutions") authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Board of Directors, on behalf of the Defendant.

6.      The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

7.      In addition to the relevant considerations articulated in the DPA, the Fraud Section and the Office enter into this Agreement based on their determination of the individual facts and circumstances presented by the Defendant's breach of the DPA, including the following:

a.      the Defendant failed to comply with the obligations set forth in paragraphs 5 and 6 of the DPA, as determined by the Department of Justice and as described in the Factual Basis for Breach attached to this Agreement as Attachment A-1;

b.      as part of the DPA, the Defendant received partial credit for its cooperation with the Fraud Section and the Office's investigation; however, in light of the Defendant's failure to disclose key factual evidence and information to the Department as described in the Factual Basis for Breach attached to this Agreement as Attachment A-1, the Defendant's prior cooperation

credit has been eliminated both under U.S.S.G. § 8C2.5(g)(2) and pursuant to the FCPA Corporate Enforcement Policy, JM § 9-47.120, in connection with this Agreement;

       c.    although the Defendant had inadequate anti-corruption controls and an inadequate anti-corruption compliance program during the period of conduct described in the Statement of Facts attached to this Agreement as Attachment A-2, prior to and since entering into the DPA the Defendant has significantly enhanced its compliance program and internal accounting controls through structural and leadership changes, including but not limited to the hiring of a new Chief Legal Officer and new Head of Corporate and Government Investigations and the establishment of a multi-disciplinary Business Risk Committee comprised of Group-level senior executives who oversee and apply a heightened scrutiny approach to group material risks, to ensure that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement ("Corporate Compliance Program"), and has committed to continuing to implement and test further enhancements;

       d.    the Defendant has agreed to extend the engagement of the independent compliance monitor (the "Monitor") retained under the DPA (as set forth in Paragraphs 11-14 and Attachment D to the DPA) until the end of the term of this Agreement;

       e.    the Defendant has no prior criminal history, other than the DPA and the related guilty plea by its majority-owned subsidiary Ericsson Egypt Ltd.; and

       f.    the Defendant has significantly enhanced its cooperation and information sharing efforts since the Fraud Section and Office notified the Defendant of the breach and continues to agree to cooperate with the Fraud Section and the Office in any ongoing investigation as described in Paragraph 12 below.

g.      Accordingly, after considering (a) through (f) above, and pursuant to Paragraph 17 of the DPA, the Fraud Section and the Office believe that the appropriate resolution of the Defendant's breach of the DPA is for the Defendant to plead guilty to Counts One and Two of the Information; to extend the Monitor for the duration of the term of this Agreement; and to pay an overall criminal monetary fine of $727,379,280, which reflects a fine at the midpoint between the low end and the high end (which in this case is the statutory maximum fine) of the applicable Sentencing Guidelines fine range.   The Fraud Section and the Office will credit $520,650,432 previously paid by the Defendant pursuant to the DPA, resulting in a remaining criminal penalty of $206,728,848.

8.      The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

a.      to plead guilty as set forth in this Agreement;

b.      to abide by all sentencing stipulations contained in this Agreement;

c.      to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

d.      to commit no further crimes;

e.      to be truthful at all times with the Court;

f.      to pay the applicable fine and special assessment;

g.      to cooperate fully with the Fraud Section and the Office as described in Paragraph 12;

h.      to continue to implement a compliance and ethics program, as described in Paragraphs 9-10 and Attachment C of this Agreement; and

   i.  to extend the term of the Monitor engaged in accordance with Attachment D of the DPA by one year, i.e., through the end of the term of this Agreement.

  9.  The Defendant represents that it has implemented and will continue to implement a compliance and ethics program that meets, at a minimum, the elements set forth in Attachment C.  Such program shall be designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C. Thirty days prior to the expiration of the Term, the Defendant, by its Chief Executive Officer and Chief Compliance Officer, will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment E to this Agreement, that the Defendant has met its compliance obligations pursuant to this Agreement. This certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

  10.  In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Defendant represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under the Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws.  Where necessary and appropriate, the Defendant will adopt new or modify existing internal controls, compliance policies, and procedures in order to ensure that the Defendant maintains: (a) an effective system of internal accounting controls

designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws.   The compliance program, including the internal accounting controls system, will include, but not be limited to, the minimum elements set forth in Attachment C.   The Offices, in their sole discretion, will consider the Monitor's certification decision in assessing the Defendant's compliance program and the state of its internal accounting controls.

11.   Except as may otherwise be agreed by the parties in connection with a particular transaction, the Defendant agrees that in the event that, during the Term, the Defendant undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Defendant's consolidated operations, or to the operations of any direct or indirect affiliates, subsidiaries, and joint ventures involved in the conduct described in Attachment A-2 of the Agreement, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.   The purchaser or successor in interest must also agree in writing that the Fraud Section and the Office's ability to assert a breach under this Agreement is applicable in full force to that entity.   The Defendant agrees that the failure to include these provisions in the transaction will make any such transaction null and void.   The Defendant shall provide notice to the Fraud Section and the Office at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form.   If the Fraud Section and the Office notify the Defendant prior to such transaction (or series of

8

transactions) that they have determined that the transaction or transactions have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Fraud Section and the Office, the Defendant agrees that such transaction or transactions will not be consummated.  In addition, if at any time during the Term the Defendant engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Fraud Section and the Office may deem it a breach of this Agreement pursuant to Paragraphs 23-26.  Nothing herein shall restrict the Defendant from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and the Office.

12.     The Defendant shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and Attachment A-2 and any individual or entity referred to therein, as well as any other conduct under investigation by the Fraud Section and the Office at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.  At the request of the Fraud Section and the Office, the Defendant shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the MDBs, in any investigation of the Defendant, its direct or indirect affiliates, subsidiaries, and joint ventures, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and Attachment A-2. The Defendant's cooperation pursuant to this Paragraph is subject to applicable law and regulations, including data privacy and national security laws, as well as

valid claims of attorney-client privilege or attorney work product doctrine; however, the Defendant must provide to the Fraud Section and the Office a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Defendant bears the burden of establishing the validity of any such assertion. The Defendant agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.   The Defendant represents that it has truthfully disclosed all relevant factual information as of the date of the initial breach notification on October 21, 2021 about which the Defendant has any knowledge with respect to its activities, those of its direct or indirect affiliates, subsidiaries, and joint ventures, and those of its present and former directors, officers, employees, agents, and consultants, relating to the conduct described in this Agreement and the Statement of Facts attached as Attachment A-2 and other conduct under investigation by the Fraud Section and the Office. The Defendant further represents that it will truthfully disclose all factual information about which the Fraud Section and the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Fraud Section and the Office, upon request, any document, record, or other tangible evidence about which the Fraud Section and the Office may inquire of the Defendant, including evidence that is responsive to any requests made prior to the execution of this Agreement.

b.   Upon request of the Fraud Section and the Office, the Defendant shall designate knowledgeable employees, agents, or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 12(a) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

      c.      The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents, and consultants of the Defendant.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

      d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Defendant consents to any and all disclosures to other governmental authorities, including United States authorities and those of a foreign government, as well as to the MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

      e.      The Defendant has ongoing obligations under the National Security Agreement (NSA) entered into by the Defendant, Ericsson Global Network Platform Holding Inc., Vonage Holdings Corporation ("Vonage"), and the U.S. Department of Justice and the U.S. Department of the Treasury as the Committee on Foreign Investment in the United States (CFIUS) Monitoring Agencies in CFIUS Case No. 22-120, regarding the Defendant's acquisition of Vonage. The NSA obligations include, among other things, Vonage's obligation under NSA Article VI.D.12 to ensure that the Vonage Security Officer communicates with the Defendant's independent compliance monitor regarding any information that the Vonage Security Officer deems relevant to compliance with the NSA, in accordance with the Security Plan established under the NSA. The Defendant's independent compliance monitor will provide the Vonage Security Officer with the requisite information, reports, and documents, as well as quarterly (or if

11

necessary, more frequent) briefings, to ensure that the Vonage Security Officer can meet its obligations under NSA Article VI.D.12.

13.     During the Term, should the Defendant learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of the United States, the Defendant shall promptly report such evidence or allegation to the Fraud Section and the Office.  Thirty days prior to the end of the Term, the Defendant, by the Chief Executive Officer of the Defendant and the Chief Financial Officer of the Defendant, will certify to the Fraud Section and the Office in the form of executing the document attached as Attachment F to this Agreement that the Defendant has met its disclosure obligations pursuant to this Paragraph.  Each certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

14.     The Defendant agrees that any fine or mandatory special assessment imposed by the Court will be due and payable as specified in Paragraph 22 below.

**The United States' Agreement**

15.     In exchange for the guilty plea of the Defendant and the complete fulfillment of all of the Defendant's obligations under this Agreement, the Fraud Section and the Office agree they will not file additional criminal charges against the Defendant or any of its direct or indirect affiliates, subsidiaries, or joint ventures (a) relating to any of the conduct described in the Statement of Facts attached hereto as Attachment A-2 or the Factual Basis for Breach attached hereto as Attachment A-1, or (b) based on information provided to the Fraud Section and the Office prior to the DPA, as well as pursuant to the Defendant's cooperation and disclosure obligations

12

under paragraphs 5 and 6 of the DPA prior to the date of this Agreement, other than the information related to certain historical conduct in Iraq described in a 2019 internal investigation report, which Ericsson referred to as case number 2019-0044 in its disclosures to the Fraud Section and the Office. Nothing in this Agreement precludes the Fraud Section and the Office from investigating and filing criminal charges relating to the matters described in (b) above, in the event the Fraud Section and the Office learn material information concerning such matters that was not disclosed by the Defendant prior to the date of this Agreement. The Fraud Section and the Office, however, may use any information related to the conduct described in the Statement of Facts attached hereto as Attachment A-2 against the Defendant: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection against prosecution for any future conduct by the Defendant or any of its direct or indirect affiliates, subsidiaries, or joint ventures. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Defendant. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any of the Defendant's tax liabilities and reporting obligations.

**Factual Basis**

16.     The Defendant is pleading guilty because it is guilty of the charges contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and Attachment A-2 are true and correct, that it is responsible for the acts of its officers, directors, employees, and agents described in the Information and Attachment A-2. The Defendant stipulates to the admissibility of the Statement of Facts in Attachment A-2 in any

13

proceeding by the Fraud Section and the Office, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts in Attachment A-2 at any such proceeding.

**The Defendant's Waiver of Rights, Including the Right to Appeal**

17.    Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn.  The Defendant expressly warrants that it has discussed these rules with its counsel and understands them.  Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410.  The Defendant agrees that, effective as of the date the Defendant signs this Agreement, it will not dispute the Statement of Facts set forth in Attachment A-2 to this Agreement, and that the Statement of Facts shall be admissible against the Defendant in any criminal case involving the Fraud Section and the Office and the Defendant, as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing.  In addition, the Defendant agrees not to assert any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including U.S.S.G. § 1B1.1(a)) that the Statement of Facts set forth in Attachment A-2 to this Agreement should be suppressed or is otherwise inadmissible as evidence (in any form).  Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal

criminal proceeding if, even though the Fraud Section and the Office have fulfilled all of their obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

18.     The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance.  The Defendant understands that by entering into the Agreement, the Defendant surrenders certain rights as provided in the Agreement.  The Defendant understands that the rights of criminal defendants include the following:

(a)     the right to plead not guilty and to persist in that plea;

(b)     the right to a jury trial;

(c)     the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

(d)     the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

(e)     pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack its convictions or any sentence within the statutory maximum described below (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this plea agreement.  This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).  The Defendant also knowingly waives the right to collaterally challenge

15

either the convictions or the sentence imposed in this case.  The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.  The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in Attachment A-2 or the Information, including any prosecution that is not time-barred on the date that this Agreement is signed, in the event that: (a) either or both convictions are later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea, plus the remaining time period of the statute of limitations as of the date that this Agreement is signed.  The Fraud Section and the Office are free to take any position on appeal or any other post-judgment matter.  The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.  Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

In connection with the Defendant's plea of guilty, the Defendant, in consultation with counsel, has chosen not to request discovery materials pursuant to Fed. R. Crim. P. 16 ("Rule 16 Material").  The Defendant understands that if not for Defendant's plea of guilty, the Government would be required to produce Rule 16 Material, and would further be required to produce material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Fed R. Crim. P. 5(f), and, if the Defendant

proceeded to trial, impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and *Jencks* Act material.  The Defendant acknowledges that the Defendant has not and will not receive such information because the Defendant has decided to plead guilty, waives the right to this information, and agrees not to withdraw the Defendant's plea or to attack the Defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any such information, apart from any information establishing the factual innocence of the Defendant.

## Penalty

19.     The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is: a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest (Title 18, United States Code, Section 371 and Title 18, United States Code, Section 3571(c), (d)); five years' probation (Title 18, United States Code, Section 3561(c)(1)); and a mandatory special assessment of $400 per count (Title 18, United States Code, Section 3013(a)(2)(B)).  In this case, the parties agree that the gross pecuniary gain resulting from the offenses is $382,831,200. Therefore, pursuant to 18 U.S.C. § 3571(d), the maximum fine that may be imposed is $765,662,400.

## Sentencing Recommendation

20.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory Sentencing Guidelines range.  The Court will then determine a reasonable sentence within the statutory range after considering the advisory Sentencing Guidelines range and the factors listed in Title 18, United States Code, Section 3553(a).  The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors

sufficient to satisfy the applicable burden of proof.  The Defendant understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 22.

21.     The Fraud Section and the Office and the Defendant agree that a faithful application of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") to determine the applicable fine range yields the following analysis:

a.      The November 1, 2021 Guidelines manual applies to this matter.

b.      <u>Offense Level</u>.  Based upon U.S.S.G. § 2C1.1, the total offense level is 46, calculated as follows:

| (a)(2) | Base Offense Level | 12 |
|---|---|---|
| (b)(1) | Multiple bribes | +2 |
| (b)(2) | Value of Benefit Received ($382,831,200) | +28 |
| (b)(3) | Involvement of High-level Official | +4 |
| **TOTAL** | | 46 |

c.      <u>Base Fine</u>.  Based upon U.S.S.G. § 8C2.4(a)(2), the base fine is $382,831,200 (the pecuniary gain to the Defendant from the offense).

d.      <u>Culpability Score</u>.  Based upon U.S.S.G. § 8C2.5, the culpability score is 9, calculated as follows:

| (a) | Base Culpability Score | 5 |
|---|---|---|
| (b)(1) | the unit of the organization within which the offense was committed had 5,000 or more employees and an individual within high-level personnel of the unit participated in, condoned, or was willfully ignorant of the offense | +5 |
| (g)(3) | The organization clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | - 1 |
| **TOTAL** | | 9 |

18

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $382,831,200 |
| Multipliers | 1.80(min)/2.00 (max)[1] |
| Fine Range | $689,096,160 (min)/<br>$765,662,400 (max) |
| Fine Range Mid-Point: | $727,379,280 |
| Previously paid penalty | $520,650,432 |
| Remaining penalty | $206,728,848 |

22.     Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Fraud Section and the Office and the Defendant agree that the following represents the appropriate disposition of the case and recommend jointly that the Court impose the following sentence:

a.     <u>Disposition</u>.  The appropriate criminal fine is $727,379,280.  This penalty reflects a fine at the midpoint between the low end of the applicable Sentencing Guidelines fine range and the high end of the applicable Sentencing Guidelines fine range, which in this case is the statutory maximum fine.  The Fraud Section and the Office will credit $520,650,432 previously paid by the Defendant pursuant to the DPA, resulting in a remaining total criminal monetary

---

[1] Under U.S.S.G. § 8C2.6, a culpability score of 9 results in a minimum multiplier of 1.80 and a maximum multiplier of 3.60.  As set forth in Paragraph 18, however, the statutory maximum fine here is twice the gross pecuniary gain resulting from the offense, *see* 18 U.S.C. § 3571(c)(3) & (d), or twice the base fine of $382,831,200.  Under U.S.S.G. § 8C3.1(a), the maximum Guideline fine cannot exceed the statutory maximum fine.  Accordingly, the maximum multiplier here is 2.00, not 3.60.

penalty of $206,728,848 (the "Total Criminal Fine"), payable in full at the time of the entry of judgment.

        b.      <u>Mandatory Special Assessment</u>.  The Defendant shall pay to the Clerk of the Court for the United States District Court for the Southern District of New York the mandatory special assessment of $400 per count.  The mandatory special assessments shall be payable in full at the time of the entry of judgment.

        c.      The Defendant and the Fraud Section and the Office waive the preparation of a Pre-Sentence Investigation Report ("PSR") and intend to seek sentencing by the Court immediately following the Rule 11 hearing.  The Defendant understands that the decision whether to proceed with the sentencing proceeding without a PSR is exclusively that of the Court.  In the event the Court directs the preparation of a PSR, the Fraud Section and the Office will fully inform the preparer of the PSR and the Court of the facts and law related to the Defendant's case.

        d.      <u>Probation.</u>  In light of the Defendant's breach of the DPA, the Fraud Section and the Office and the Defendant agree that a term of organizational probation for a period lasting until the end of the Term on June 2, 2024, shall be imposed on the Defendant pursuant to Title 18, United States Code, Sections 3551(c)(1) and 3561(c)(1).  The parties agree, pursuant to U.S.S.G. § 8D1.4, that the term of probation shall include as conditions the obligations set forth in Paragraphs 8(a)-(g), 12, and 13 above, as well as the payment of a fine, as set forth in Paragraph 22(a).

## **Breach of Agreement**

23.     If, during the Term, the Defendant (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 12 and 13 of this Agreement; (d) fails

to implement a compliance program as set forth in Paragraphs 9 and 10 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f) otherwise fails specifically to perform or to fulfill completely any of its obligations under the Agreement, and is found to have breached the Agreement by the Court pursuant to paragraph 24 or by the Fraud Section and the Office pursuant to paragraph 25, regardless of whether the Fraud Section and the Office become aware of such a breach after the Term, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including additional charges arising out of the conduct described in the Statement of Facts attached hereto as Attachment A-2, distinct from the charges in the Information described in Paragraph 2, as well as charges related to any additional criminal conduct, if appropriate. Such charges may be pursued by the Fraud Section and the Office in the U.S. District Court for the Southern District of New York or any other appropriate venue. Any such prosecution may be premised on information provided by the Defendant or its personnel. Any such prosecution relating to the conduct described in the Statement of Facts attached hereto as Attachment A-2 or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution

or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraphs 11 and 12 of the Agreement will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section and the Office are made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

24.     If the Fraud Section and the Office determine that the Defendant has breached any obligations that are also conditions of probation—specifically Paragraphs 8(a)-(g), 11, 12, 13, or 22(a)—the Fraud Section and the Office will notify the Defendant, and the Defendant will have the ability to respond as described in paragraph 26. If, after review of the Defendant's response, the Fraud Section and the Office maintain that the Defendant has breached, they will notify the Probation Office and the Court. If the Court finds that such a breach and corresponding probation violation occurred, the Fraud Section and the Office may pursue prosecution of the Defendant as discussed in Paragraph 23.

25.     Determination of whether the Defendant has breached any other obligations—that are not also conditions of probation—shall be in the sole discretion of the Fraud Section and the Office.

26.     In the event the Fraud Section and the Office determine that the Defendant has breached this Agreement—whether the breach is a condition of probation or not—the Fraud Section and the Office agree to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Defendant shall have the opportunity to respond to the Fraud Section and the Office in writing

to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Fraud Section and the Office shall consider in determining next steps pursuant to paragraphs 23-25.

27.     In the event that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant to the Fraud Section and the Office or to the Court, including the Statement of Facts attached hereto as Attachment A-2, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.

28.     The Defendant acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and is subsequently prosecuted for any crime, or the breach constitutes a violation of the Defendant's probation.  The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

### Public Statements by the Defendant

29.     The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the

23

Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information and Attachment A-2.  Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to sanction or prosecution as set forth in Paragraphs 23-26 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Information or Attachment A-2 will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section and the Office.  If the Fraud Section and the Office determine that a public statement by any such person contradicts in whole or in part a statement contained in the Information or Attachment A-2, the Fraud Section and the Office shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and Attachment A-2 provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or Attachment A-2.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

30.     The Defendant agrees that if it or any of its direct or indirect affiliates, subsidiaries, or joint ventures over which the Defendant exercises control issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Fraud Section and the Office to determine: (a) whether the text of the release or proposed statements at

the press conference are true and accurate with respect to matters between the Fraud Section and

the Office and the Defendant; and (b) whether the Fraud Section and the Office have any objection

to the release or statement.

## **Complete Agreement**

31.     This document states the full extent of the Agreement between the parties.  There

are no other promises or agreements, express or implied.  Any modification of this Agreement

shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all

parties.

DocuSign Envelope ID: 4A9F4E0E-DAF5-4CAA-8058-7EF52F746C12

**AGREED:**

**FOR TELEFONAKTIEBOLAGET LM ERICSSON:**

Date: 02 March 2023 | 19:20:47 CET     By: _Carl Mellander_
Authorized Representative of
Telefonaktiebolaget LM Ericsson

Date: 02 March 2023 | 19:26:27 CET     By: _____
Authorized Representative of
Telefonaktiebolaget LM Ericsson

Date: March 2, 2023     By: _F. Joseph Warin_
F. Joseph Warin
Courtney M. Brown
Gibson, Dunn & Crutcher LLP
William P. Barry
Miller & Chevalier Chartered
Outside counsel for Telefonaktiebolaget
LM Ericsson

**FOR THE DEPARTMENT OF JUSTICE:**

Glenn S. Leon
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

Date: March 2, 2023     By: _Michael Culhane Harper_
Michael Culhane Harper
Trial Attorney

Damian Williams
United States Attorney
Southern District of New York
U.S. Department of Justice

Date: March 2, 2023     By: _Juliana Murray_
David Abramowicz
Juliana Murray
Assistant United States Attorneys

26