**ATTACHMENT D**

**INDEPENDENT COMPLIANCE MONITOR**

The duties and authority of the Independent Compliance Monitor (the "Monitor"), and the obligations of Telefonaktiebolaget LM Ericsson (the "Company"), on behalf of itself and its subsidiaries and affiliates, with respect to the Monitor and the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section") and the Office of the United States Attorney for the Southern District of New York (the "Office") (collectively, "the Department"), are as described below:

1.      The Company retained the Monitor on June 2, 2020 for a period of three years pursuant to the Deferred Prosecution Agreement in United States v. Telefonaktiebolaget LM Ericsson, 1:19-cr-00884-AJN, DE 6, (December 6, 2019 S.D.N.Y.) entered into between the Defendant and the Department on December 6, 2019 (the "DPA").

2.      The Company and the Department agree to extend the term of the monitorship for one year (the "Term of the Monitorship") until June 1, 2024, unless the extension or early termination provision of Paragraph 1 of the Plea Agreement (the "Agreement") is triggered.

*Monitor's Mandate*

3.      The Monitor's primary responsibility is to assess and monitor the Company's compliance with the terms of the Agreement, including the Corporate Compliance Program in Attachment C, to specifically address and reduce the risk of any recurrence of the Company's misconduct. During the Term of the Monitorship, the Monitor will evaluate, in the manner set forth below, the effectiveness of the internal accounting controls, record-keeping, and financial reporting policies and procedures of the Company as they relate to the Company's current and ongoing compliance with the FCPA and other applicable anti-corruption laws (collectively, the

"anti-corruption laws") and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate"). This Mandate shall include an assessment of the Board of Directors' and senior management's commitment to, and effective implementation of, the corporate compliance program described in Attachment C of the Agreement.

*Company's Obligations*

4.      The Company shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about the Company's compliance program in accordance with the principles set forth herein and subject to applicable law, including applicable data protection and labor laws and regulations. To that end, the Company shall: facilitate the Monitor's access to the Company's documents and resources; not limit such access, except as provided in Paragraphs 11-12; and provide guidance on applicable local law (such as relevant data protection and labor laws). The Company shall provide the Monitor with access to all information, documents, records, facilities, and employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under the Agreement. The Company shall use its best efforts to provide the Monitor with access to the Company's former employees and its third-party vendors, agents, and consultants.

5.      Any disclosure by the Company to the Monitor concerning corrupt payments, false books and records, and internal accounting control failures shall not relieve the Company of any otherwise applicable obligation to truthfully disclose such matters to the Department, pursuant to the Agreement.

*Withholding Access*

6.      The parties agree that no attorney-client relationship shall be formed between the Company and the Monitor. In the event that the Company seeks to withhold from the Monitor access to information, documents, records, facilities, or current or former employees of the Company that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where the Company reasonably believes production would otherwise be inconsistent with applicable law, the Company shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

7.      If the matter cannot be resolved, at the request of the Monitor, the Company shall promptly provide written notice to the Monitor and the Department. Such notice shall include a general description of the nature of the information, documents, records, facilities, or current or former employees that are being withheld, as well as the legal basis for withholding access. The Department may then consider whether to make a further request for access to such information, documents, records, facilities, or employees.

*Monitor's Coordination with the*
*Company and Review Methodology*

8.      In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor should coordinate with Company personnel, including in-house counsel, compliance personnel, and internal auditors, on an ongoing basis. The Monitor may rely on the product of the Company's processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of the Company, as well as the Company's internal resources (*e.g.*, legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate through increased efficiency and Company-specific expertise, provided that the Monitor has confidence in the quality of those resources.

9.      The Monitor's reviews should use a risk-based approach, and thus, the Monitor is not expected to conduct a comprehensive review of all business lines, all business activities, or all markets. In carrying out the Mandate, the Monitor should consider, for instance, risks presented by: (a) the countries and industries in which the Company operates; (b) current and future business opportunities and transactions; (c) current and potential business partners, including third parties and joint ventures, and the business rationale for such relationships; (d) the Company's gifts, travel, and entertainment interactions with foreign officials; and (e) the Company's involvement with foreign officials, including the amount of foreign government regulation and oversight of the Company, such as licensing and permitting, and the Company's exposure to customs and immigration issues in conducting its business affairs.

10.      In undertaking the reviews to carry out the Mandate, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including the Company's current anti-corruption policies and procedures; (b) on-site observation of selected systems and procedures of the Company at sample sites, including internal accounting controls, record-keeping, and internal audit procedures; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents, and other persons at mutually convenient times and places; and (d) analyses, studies, and testing of the Company's compliance program.

<em>Monitor's Written Work Plans</em>

11.      Pursuant to the mandate under the DPA, the Monitor has conducted three reviews and prepared three reports, which were submitted to the Department.

12.      To carry out the Mandate pursuant to the Agreement, during the Term of the Monitorship, the Monitor shall conduct a supplemental review and prepare a fourth report, as

D-4

described in Paragraphs 14-17 below. With respect to the fourth report, after consultation with the Company and the Department, the Monitor shall prepare the fourth written work plan on or before April 15, 2023, and the Company and the Department shall provide comments within twenty (20) calendar days after receipt of the written work plan. Any disputes between the Company and the Monitor with respect to any written work plan shall be decided by the Department in its sole discretion.

13.    All written work plans shall identify with reasonable specificity the activities the Monitor plans to undertake in execution of the Mandate, including a written request for documents. The Monitor's work plan for the fourth review shall include such steps as are reasonably necessary to conduct an effective fourth review in accordance with the Mandate, including by developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement. In developing such understanding, the Monitor is to rely, to the extent possible, on available information and documents provided by the Company. It is not intended that the Monitor will conduct his or her own inquiry into the historical events that gave rise to the Agreement.

*Fourth Review*

14.    The fourth review shall consist of two phases. The first phase of the fourth review commenced on January 15, 2023, pursuant to prior agreement between the Department, the Monitor, and the Company. The second phase of the fourth review shall commence no later than thirty (30) calendar days from the date of the date of the Monitor's fourth review work plan (unless otherwise agreed by the Company, the Monitor, and the Department). The Monitor shall issue a written report within two hundred fifteen (215) days of commencing the second phase of the fourth review, setting forth the Monitor's assessment and, if

necessary, making recommendations reasonably designed to improve the effectiveness of the Company's program for ensuring compliance with the anti-corruption laws. The Monitor should consult with the Company concerning his or her findings and recommendations on an ongoing basis and should consider the Company's comments and input to the extent the Monitor deems appropriate. The Monitor may also choose to share a draft of his or her report with the Company prior to finalizing the report. The Monitor's report need not recite or describe comprehensively the Company's history or compliance policies, procedures and practices. Rather, the report should focus on areas the Monitor has identified as requiring recommendations for improvement or which the Monitor otherwise concludes merit particular attention. The Monitor shall provide the report to the Board of Directors of the Company and contemporaneously transmit copies to

> Deputy Chief – FCPA Unit
> Deputy Chief – CECP Unit
> Criminal Division, Fraud Section
> U.S. Department of Justice
> 1400 New York Avenue N.W.
> Bond Building, Eleventh Floor
> Washington, D.C. 20005
>
> Chief, Criminal Division
> United States Attorney's Office for the Southern District of New York
> 1 St. Andrew's Plaza
> New York City, NY 10007

After consultation with the Company, the Monitor may extend the time period for issuance of the fourth report for a brief period of time with prior written approval of the Department.

15.     Within ninety (90) calendar days after receiving the Monitor's fourth report, the Company shall adopt and implement all recommendations in the report. If the Company considers any recommendations unduly burdensome, inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable, it must notify the Monitor and the Department of any such recommendations in writing within twenty (20) calendar days of receiving

the report. The Company need not adopt those recommendations within the ninety (90) calendar days of receiving the report but shall propose in writing to the Monitor and the Department an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which the Company and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after the Company serves the written notice.

16.     In the event the Company and the Monitor are unable to agree on an acceptable alternative proposal, the Company shall promptly consult with the Department. The Department may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations under the Agreement. Pending such determination, the Company shall not be required to implement any contested recommendation(s).

17.     With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Department.

*Certification of Compliance*
*and Termination of the Monitorship*

18.     At the conclusion of the one hundred and five (105) calendar day period following the issuance of the fourth report, if the Monitor believes that the Company's compliance program is reasonably designed and implemented to detect and prevent violations of the anti-corruption laws and is functioning effectively, the Monitor shall certify the Company's compliance with its compliance obligations under the Agreement. The Monitor shall then submit to the Department a written report ("Certification Report") within thirty (30) calendar days. The Certification Report shall set forth an overview of the Company's remediation efforts to date, including the

implementation status of the Monitor's recommendations, and an assessment of the sustainability of the Company's remediation efforts. Also at the conclusion of the 105 calendar day period following the issuance of the fourth report, the Company shall certify in writing to the Department, with a copy to the Monitor, that the Company has adopted and implemented all of the Monitor's recommendations in all prior reports, or the agreed-upon alternatives. The Monitor or the Company may extend the time period for issuance of the Certification Report or the Company's certification, respectively, with prior written approval of the Department.

*Monitor's Discovery of Potential or Actual Misconduct*

19.    (a)        Except as set forth below in sub-paragraphs (b), (c) and (d), should the Monitor discover during the course of his or her engagement that:

- improper payments or anything else of value may have been offered, promised, made, or authorized by any entity or person within the Company or any entity or person working, directly or indirectly, for or on behalf of the Company; or

- the Company may have maintained false books, records or accounts; or

the Company may have failed to implement a system of internal accounting controls that is sufficient to accurately record the Company's transactions.(collectively, "Potential Misconduct"), the Monitor shall immediately report the Potential Misconduct to the Company's General Counsel, Chief Compliance Officer, and/or Audit Committee for further action, unless the Potential Misconduct was already so disclosed. The Monitor also may report Potential Misconduct to the Department at any time, and shall report Potential Misconduct to the Department when it requests the information.

(b)     In some instances, the Monitor should immediately report Potential Misconduct directly to the Department and not to the Company. The presence of any of the following factors militates in favor of reporting Potential Misconduct directly to the Department and not to the Company, namely, where the Potential Misconduct: (1) poses a risk to public health or safety or the environment; (2) involves senior management of the Company; (3) involves obstruction of justice; or (4) otherwise poses a substantial risk of harm.

(c)     If the Monitor believes that any Potential Misconduct has occurred or may constitute a criminal or regulatory violation ("Actual Misconduct"), the Monitor shall immediately report the Actual Misconduct to the Department. When the Monitor discovers Actual Misconduct, the Monitor shall disclose the Actual Misconduct solely to the Department, and, in such cases, disclosure of the Actual Misconduct to the General Counsel, Chief Compliance Officer, and/or the Audit Committee of the Company should occur as the Department and the Monitor deem appropriate under the circumstances.

(d)     The Monitor shall address in his or her reports the appropriateness of the Company's response to disclosed Potential Misconduct or Actual Misconduct, whether previously disclosed to the Department or not. Further, if the Company or any entity or person working directly or indirectly for or on behalf of the Company withholds information necessary for the performance of the Monitor's responsibilities and the Monitor believes that such withholding is without just cause, the Monitor shall also immediately disclose that fact to the Department and address the Company's failure to disclose the necessary information in his or her reports.

(e)     Neither the Company nor anyone acting on its behalf shall take any action to retaliate against the Monitor for any such disclosures or for any other reason.

*Meetings During Pendency of Monitorship*

20.     The Monitor shall meet with the Department within thirty (30) calendar days after providing the report to the Department to discuss the report, to be followed by a meeting between the Department, the Monitor, and the Company.

21.     At least annually, and more frequently if appropriate, representatives from the Company and the Department will meet to discuss the monitorship and any suggestions, comments, or improvements the Company may wish to discuss with or propose to the Department, including with respect to the scope or costs of the monitorship.

*Contemplated Confidentiality of Monitor's Reports*

22.     The reports will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, or impede pending or potential government investigations and thus undermine the objectives of the monitorship. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the Department determines in its sole discretion that disclosure would be in furtherance of the Department's discharge of its duties and responsibilities or is otherwise required by law.